IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | | |
|---|---|---|
| **TERRY W. HAYNES** | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | CIVIL ACTION NUMBER |
| | ) | **5:07-CV-1294-UWC** |
| **MICHAEL J. ASTRUE**, | ) | |
| COMMISSIONER OF | ) | |
| SOCIAL SECURITY | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**MEMORANDUM OPINION**

Plaintiff, Terry W. Haynes ("Plaintiff"), brings this action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), seeking review of the final adverse decision of the Commissioner of the Social Security Administration ("SSA"). This Court finds that the decision of the Administrative Law Judge ("ALJ"), which has become the decision of the Commissioner, ignored substantial evidence and failed to consider the combined effects of multiple impairments. Therefore, for the reasons elaborated herein, the Court will **REVERSE** the decision of the Commissioner. The case is due to be

**REMANDED** to the Commissioner with instructions that Plaintiff be granted benefits, subject to satisfaction of income and resource requirements.

## I.  Procedural History

Plaintiff filed an application for disability insurance benefits and supplemental security income on March 11, 2004.  This application was denied on June 9, 2004.  After some delay for good cause with respect to the application for a hearing before an Administrative Law Judge ("ALJ"), the hearing took place on March 3, 2006. (R. 364-371).  The ALJ issued an unfavorable decision denying benefits on May 19, 2006.  Having timely pursued and exhausted his administrative remedies before the Commissioner, Plaintiff filed an action for judicial review in federal district court pursuant to § 1631 of the Social Security Act, 42 U.S.C. § 1383 (c)(3) on July 10, 2007.

## II.  Factual Background

At the time of the hearing, Plaintiff testified that he was fifty-four years old and had completed only the eighth grade in special education classes.  Plaintiff has been unable to engage in substantial gainful activity since July 14, 2003, due to difficulty breathing, morbid obesity, shoulder injury, heat stroke, depression, foot problems and neck pain.  The vocational expert ("VE") classified the plaintiff's past relevant work experience as an auto mechanic as having been performed at

the medium level of exertion and skilled in nature.  The VE classified plaintiff's past relevant work experience a s a construction worker as having been performed at the heavy exertional level and semi-skilled in nature.

Plaintiff alleges disability primarily due to difficulty breathing, morbid obesity, shoulder injury, heat stroke, depression, foot problems and neck pain. Indeed, the ALJ found severe impairments including obesity, mild degenerative disc disease of the thoracic spine, pulmonary disease due to chronic smoking, edema of the legs, and right shoulder hypertrophy. (R. 26.)  Consequently, plaintiff has taken the following medications during his treatment history:  Flomax (for prostate), Lunesta (for sleep) Lexapro (for depression), Novasal (for pain).   (R. 140.)  Moreover, he is only able to read and write "very little." (R. 349) C

Plaintiff alleges that his daily activities consist of light household chores and watching television.  He further testified that, as a result of his conditions, he is unable to sit more than an hour due to swelling of the legs and must lie down. He becomes exhausting even bathing himself and must get down on his hands and knees to get out of the bathtub. He further testified that he cannot pick up anything with any substantial weight due to shoulder and back pain.  He claims to be forgetful, unable to concentrate, and confused easily.  (R. 355-362.)

**A.  Treatment History**

Although plaintiff's medical evidence of record ("MER") is admittedly sparse, plaintiff was an unemployed male living in a rural area with little access to medical care.  However, the MER, coupled with his testimony at the administrative hearing, indicates that plaintiff is clearly disabled.

On May 20, 1997 plaintiff presented to Decatur Medical Associates Center complaining of acute right shoulder pain secondary to a fall at work.  (R. 196.) Plaintiff visited on numerous occasions for about a year complaining of recurring pain.  Plaintiff was prescribed ice packs, heating pads, and pain relievers. (R. 144-189.)  On August 23, 1999, plaintiff presented to Decatur Medical Associates Center with complaints of difficulty sleeping and leg pain secondary to a knot in his lower thigh.  An unidentified doctor noted an elevated blood pressure at this visit as well.

On January 16, 2000, plaintiff presented to the Parkway Medical Center Hospital complaining of difficulty breathing, with wheezing upon exertion accompanied by chest pain and tightness and was diagnosed with bronchitis and sinusitis.  However, at this visit Dr. Michael Jorich also diagnosed him with mild chronic obstructive pulmonary disease ("COPD"), which is a term that actually refers to two distinct lung diseases, chronic bronchitis and emphysema, which

together obstruct normal airflow and restrict normal breathing.  COPD is the fourth leading cause of death in America.[1]  (R. 152-157.)

On March 20, 2000, plaintiff presented to the Parkway Medical Center Hospital complaining of severe back pain and pain with deep breathing secondary to a fall at work four weeks prior.  (R. 147.)   On August 10, 2000, plaintiff again presented with complaints of chest pain lasting five to ten minutes.  He also complained of Gastric Esophageal Reflux Disease ("GERD").  Plaintiff was hypertensive at this visit with a blood pressure of 140/90.  Dr. Ashish Basu, who noted that plaintiff had been a smoker for 20 to 30 years, ruled out the possibility of a heart attack and sent the patient home with instructions to begin an aspirin regimen.  (R. 163.)

On August 28, 2000, after complaints of chest pain and a positive stress test, plaintiff underwent cardiac catherization.  The procedure revealed insignificant coronary artery disease and minor irregularities in the proximal circumflex artery.  Dr. Ashish Basu noted a recommendation to evaluate non-cardiac cause of chest pain.

On May 4, 2004, Plaintiff underwent a physical exam requested by Disability Determination Services ("DDS") by Dr. Martin Gill. (R. 228-30.)

---

[1] National Center for Health Statistics, Report of Final Mortality Statistics, 2003.

Plaintiff was 52 years old at the time of the evaluation.  Dr. Gill noted that plaintiff was a poor historian.  At the time of the evaluation, plaintiff weighed 266 pounds and was 5 feet, 7 inches tall.  Dr. Gill noted that when plaintiff moved on and off the exam table, he became dyspneic, i.e., out of breath.  However, he did not note any respiratory problems, stating that "breath sounds are mildly diminished throughout each lung but they are otherwise clear."  (R. 229.)  He noted that plaintiff was "very obese."  (R.29.)

On September 15, 2005, Plaintiff presented to Dr. Wayne E. Thomas who noted that Plaintiff was "morbidly obese" and in moderate distress, showing signs of chronic depression, chronic insomnia, benign prostatic hypertrophy symptoms, and weight gain of over 100 pounds in the past two years.  Dr. Thomas' notes indicate that an organ assessment could not be performed due to plaintiff's obesity.  Dr. Thomas noted trace edema in plaintiff's extremities with an assessment including cervical and lumbar disc disease, chronic depression, and hypertension.  (R. 262.)

## B.  ALJ's Decision.

The ALJ determined, *inter alia*, that the plaintiff's medically determinable impairments could reasonably be expected to produce the alleged symptoms listed at length above.  However, the ALJ noted that the plaintiff's statements

concerning the intensity, duration, and limiting effects of these symptoms are only partially credible.  Specifically, he determined that the allegations and testimony regarding depression with complaints of forgetfulness, confusion, inability to concentrate, and insomnia are not supported by the MER.  The ALJ noted that even though plaintiff complained of insomnia, weakness, and depression during an ER visit in April 2003, the ER staff noted that the claimant was alert and only mildly distressed.  (R. 28.) The ALJ further noted that the plaintiff "made no mention" of depressive symptoms when he was seen by the consultative examiner in May of 2004.  On the contrary, the ALJ opined, the plaintiff's daily activities are not severely limited. (R.28.)

Furthermore, the ALJ pointed out that plaintiff's evaluation by Dr. Martin Gill was unremarkable (R. 29) and that Dr. Gill's findings were in fact consistent with the remaining medical evidence of record.  For example, the ALJ noted that plaintiff's cardiac catherization was insignificant for any coronary artery disease and a chest x-ray performed in January of 2003 was essentially normal.  (R. 29.) Moreover, the ALJ acknowledged plaintiff's complaints of right shoulder pain but pointed to an emergency room visit in early 1998 in which an x-ray showed evidence of an old healed fracture with some hypertrophy in the AC joint, but otherwise negative findings.  (R. 29.)

Lastly, the ALJ focused on the fact that plaintiff received no medical treatment for two years between April of 2003 and April of 2005. Through this lens, the ALJ again acknowledged plaintiff's subjective complaints, including shoulder pain, foot pain, fatigue, and shortness of breath, in an ER visit in April of 2005. However, the ALJ noted the essentially unremarkable findings from the ER examination on that date. (R. 29.) As a final note, the ALJ briefly outlined but did not discuss plaintiff's last visit to Dr. Thomas in September in which Dr. Thomas noted plaintiff as morbidly obese, trace edema, chronically depressed with a weight gain of 100 pounds in the past 2 years, cervical and lumbar disk disease, chronic insomnia, and benign prostatic hypertrophy, and in which Dr. Thomas prescribed plaintiff to Lexapro, a psychotropic medication for depression, Lunesta, a drug for insomnia, and Novasal, a pain reliever.

### III.  Controlling Legal Principles

A disability claimant has a heavy, but not insuperable, burden to establish entitlement to benefits. *Mims v. Califano*, 581 F.2d 1211, 1213 (5th Cir. 1978). The district court's standard or scope of review is limited to determining whether the substantial evidence support's the Commissioner's decision. *Richardson v. Perales*, 402 U.S. 389, 390 (1971). Additionally, the Court must determine whether proper legal standards were applied. *Lewis v. Callahan*, 125 F. 3d 1436,

1439 (11th Cir. 1997) (citing *Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987)).

Substantial evidence is more than a scintilla, but less than a preponderance. It is such evidence a reasonable mind would accept as adequate to support a conclusion. *See Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990); *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). In contrast, the Commissioner's legal conclusions are more closely scrutinized. "The [Commissioner's] failure to apply the correct law or to provide the reviewing Court with the sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal." *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-45 (11th Cir. 1991).

Applicable agency regulations require a sequential evaluation of adult disability claims. 20 C.F.R. § 404.1520 (1983). The first consideration is whether the claimant is working. If the claimant is working, she is not disabled. If the claimant is not working, the Commissioner must determine whether the claimant suffers from a severe impairment. If the claimant does not suffer from a severe impairment, she is not disabled. If the claimant suffers from a severe impairment, then the Commissioner must consider whether the claimant meets any of the listings in 20 C.F.R. pt 404, subpt P, app. 1 ("Listing"), which details

"impairments which are considered severe enough to prevent a person from doing any gainful activity." 20 C.F.R. § 404.1520(a). *See Edwards v. Heckler*, 755 F.2d 1513, 1515 (11th Cir. 1985). If the claimant's medical profile meets the criteria for an impairment in the "Listing," then the claimant is disabled by law and no further inquiry is necessary.

When a claimant's "severe" impairment does not fall within a Listing, but nonetheless restricts her ability to perform basic work activities, the ALJ must then assess the claimant's residual functional capacity and the range of work activities that the claimant could perform despite his impairments. This evaluation must give consideration to claimant's subjective complaints, accounting for nature of pain, medication, treatment, functional restrictions, claimant's daily activities, and other relevant factors. 20 C.F.R. § 404.1512.

Additionally, pursuant to 20 C.F.R. § 404.1523, the ALJ is required to consider the disabling effect of multiple impairments:

> In determining whether your physical or mental impairments are of a sufficient medical severity that such impairment or impairments could be the basis of eligibility under the law, we will consider the combined effect of all your impairments without regard to whether any such impairments if considered separately, would be of sufficient severity. If we do find a medically severe combination of impairments, the combined impact of the impairments will be considered throughout the disability determination process. If we do not find that you have a medially severe combination of impairments, we will determine that you are not disabled.

The burden is on the claimant to show that she meets the criteria under the listing.  To meet the listing, the claimant must be (1) diagnosed with a condition that is listed or its equivalent, and (2) provide objective medical reports documenting that this condition meets the specific criteria of the applicable listing and duration requirement.  *See Wilkinson v. Bowen*, 847 F.2d 660, 662 (11th Cir. 1987).

## IV.  Analysis

The ALJ provided a thorough explanation of all but one of Plaintiff's impairments and outlined the reasons why the impairments did not rise to the level of disability. However, the ALJ failed to discuss Plaintiff's morbid obesity in his decision, even though he noted it as the first of plaintiff's severe impairments. (R. 26.)  Moreover, the ALJ failed to consider the disabling effect of this obesity as it pertained to plaintiff's other impairments.  Accordingly, this Court must reverse the Commissioner's denial of Plaintiff's benefits because the ALJ ignored substantial evidence and failed to consider the combined effects of multiple impairments.

As noted above in 20 C.F.R. § 404.1523, the ALJ is required to consider the disabling effect of multiple impairments.  In his findings, the ALJ opined that plaintiff had a severe combination of impairments, **including obesity**, mild

degenerative disc disease of the thoracic spine, mild pulmonary disease, edema of the legs, and right shoulder hypertrophy. (R. 26.) (emphasis added). The ALJ considered each separate impairment, **except obesity**, and outlined seemingly compelling reasons why the medical evidence was insufficient to support an award of benefits. Again, in no portion of his opinion, except in a cursory retelling of Dr. Thomas' findings during the September 2005 visit, (R. 29) did the ALJ consider the disabling effect of plaintiff's obesity, which has been described as "morbid" by one of Plaintiff's treating physicians. (R. 262.)  As of September 2005, the plaintiff was 5'7, weighed over 300 pounds, and had gained over 100 pounds in the past two years. Because the ALJ failed to discuss plaintiff's obesity as it exists on its own, it stands to reason therefore that the ALJ failed to consider the disabling effect of this severe impairment as it relates to plaintiff's other impairments when combined. (*See* R. 262.)

For example, the ALJ noted that plaintiff's subjective complaints of chest pain and difficulty breathing were unsupported by medical evidence or, in the alternative, too intermittent to warrant a finding of disability. (R. 30.) In doing so, the ALJ apparently relied heavily on the May 2004, non-medical evaluation of Dr. Martin Gill, the state agency evaluator. During this visit, Dr. Gill's findings were unremarkable for any severe health problems. However, at the time of the visit,

plaintiff weighed 266 pounds and Dr. Gill even described him as obese, with a very obese abdomen. Dr. Gill failed to include this in his diagnosis.

In June of 2004, just one month after this evaluation, the disability specialist calculated plaintiff's height and weight to a Body Mass Index (BMI) of 41. (R. 246.) Even this arguably undervalued BMI still placed plaintiff at the worst level of obesity recognized by the National Institute of Health.[2] What is more, the medical evidence from Dr. Thomas' examination in 2005 proves that plaintiff's weight gain continued to worsen to over 300 pounds over time.

---

[2] The Social Security Administration's Policy Interpretation Ruling SSR-02-1p states:

The National Institutes of Health (NIH) established medical criteria for the diagnosis of obesity in its Clinical Guidelines on the Identification, Evaluation, and Treatment of Overweight and Obesity in Adults (NIH Publication No. 98-4083, September 1998). These guidelines classify overweight and obesity in adults according to Body Mass Index (BMI). BMI is the ratio of an individual's weight in kilograms to the square of his or her height in meters ($kg/m^2$). For adults, both men and women, the Clinical Guidelines describe a BMI of 25-29.9 as "overweight" and a BMI of 30.0 or above as "obesity."

The Clinical Guidelines recognize three levels of obesity. Level I includes BMIs of 30.0-34.9. Level II includes BMIs of 35.0-39.9. Level III, termed "extreme" obesity and representing the greatest risk for developing obesity-related impairments, includes BMIs greater than or equal to 40. These levels describe the extent of obesity, but they do not correlate with any specific degree of functional loss.

TITLES II AND XVI: EVALUATION OF OBESITY 2000 WL 628049, *2

In his decision, the ALJ failed to consider these glaring facts of obesity as evidence of a severe impairment on its own nor did he consider them in conjunction with plaintiff's other complaints of chest pain, difficulty breathing, depression, fatigue, and insomnia.  The Social Security Administration's Policy Interpretation Ruling SSR-02-1p recognizes that obesity can cause limitations in all exertional and postural functions and can affect an individuals ability to sustain movement.  "Obesity is a risk factor that increases an individual's chances of developing impairments in most body systems. It commonly leads to, and often complicates, chronic diseases of the cardiovascular, respiratory, and musculoskeletal body systems." TITLES II AND XVI: EVALUATION OF OBESITY, 2000 WL 628049, **3.**  "Obesity may also cause or contribute to mental impairments such as depression. The effects of obesity may be subtle, such as the loss of mental clarity and slowed reactions that may result from obesity-related sleep apnea." *Id.*

Plaintiff is diagnosed with both physical and mental impairments, which could all be compromised by plaintiff's morbid obesity.  However, the ALJ failed to consider the substantial impairment of obesity, which is medically documented, with respect to the other symptoms and subjective complaints.   As a result of this oversight, the ALJ also failed to have the Vocational Expert consider plaintiff's

obesity and its effect on the combination of impairments in Plaintiff's residual functional capacity evaluation.  (R. 366-70.)

Accordingly, this Court finds that the ALJ erred in failing to give adequate weight to the medical findings of morbid obesity and in failing to consider the disabling effects of plaintiff's multiple impairments.  His findings warrant reversal.

## V.  CONCLUSION

Therefore, by separate order, the Court will **REVERSE** the decision of the Commissioner.  The case is due to be **REMANDED** to the Commissioner with instructions that Plaintiff be granted benefits, subject to satisfaction of income and resource requirements.

Done the 31st day of January, 2008.

U.W. Clemon
United States District Judge